# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-3518

_____

| | | |
|---|---|---|
| Bernard Cavegn, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Twin City Pipe Trades Pension Plan, | * | |
| | * | |
| Appellee. | * | |
| | * | |

_____

Submitted: June 13, 2000
Filed: August 18, 2000

_____

Before HANSEN and HEANEY, Circuit Judges, and MILLS,[1] District Judge.

_____

HANSEN, Circuit Judge.

Bernard Cavegn filed an action against the Twin City Pipe Trades Pension Plan (plan) seeking to recover retroactive disability retirement benefits pursuant to ERISA.[2]

_____

[1]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

[2]The Employee Retirement Income Security Act of 1974 (codified as amended at 29 U.S.C. §§ 1001-1461 (1994 & Supp. III 1997) and in scattered sections of Title 26 U.S.C.).

The district court granted the plan's motion for summary judgment after concluding that Cavegn's claims are barred by a two-year statute of limitations. Cavegn appeals. We reverse.

## I.
## Facts and Background

On October 28, 1994, Cavegn suffered a back injury while working as a pipefitter for the University of Minnesota. About a year later, Cavegn submitted an application with the plan for disability pension and health care benefits. On October 30, 1995, the plan administrator denied Cavegn's application after concluding that he failed to demonstrate that he was totally disabled. Cavegn appealed the administrator's decision to the plan's trustees, but the trustees rejected his appeal. Cavegn once again appealed the plan's denial of his request for pension benefits and, on May 31, 1996, the trustees once again affirmed the plan's finding that Cavegn failed to prove that he was totally disabled. Cavegn then filed an application for disability benefits with the Social Security Administration (SSA). In September of 1996, the SSA approved his application.

In October of 1996, Cavegn again requested disability benefits from the plan. Rather than simply reject the request, the plan's trustees ordered Cavegn to complete a vocational assessment and functional capacity evaluation. Cavegn completed both the vocational assessment and functional capacity evaluation on December 5, 1996. Shortly after Cavegn complied with the trustees's directives, James J. Hynes, the plan's executive administrator, sent Cavegn a letter. Hynes's letter stated that "[d]ue to the new information provided by you [Cavegn], and provided through a vocational assessment[,] the Trustees are treating this as a _new_ application for disability pension." (Appellant's App. at A81.) (emphasis added.) The trustees, however, once again denied the application after concluding that the SSA's decision "in itself is not a

-2-

determining factor." (Id.) The trustees denied Cavegn's application on January 28, 1997.

On March 8, 1997, Steven Trobiani, M.D., examined Cavegn. Dr. Trobiani concluded in a written report that absent surgery to remove a ruptured disk in Cavegn's back, Cavegn was not "a candidate for employment in any capacity and would be considered permanently and totally disabled." (Appellant's App. at A156.) Cavegn then appealed the plan's January 28, 1997 denial. As part of his appeal, Cavegn included Dr. Trobiani's report. On June 2, 1997, the trustees reversed the January 28 decision and awarded Cavegn a disability pension. Hynes informed Cavegn that the pension would operate retroactively from November 1, 1996, which, Hynes explained, was "the first day of the month following the determination by the Trustees that you have shown you satisfied the Plan criteria." (Appellant's App. at A157.)

On July 13, 1997, Cavegn appealed the plan's decision as to the starting date of his pension and asked that the pension award apply retroactively to October 28, 1994. By letter dated August 7, 1997, the trustees denied Cavegn's appeal, concluding that he had failed to "satisf[y] the criteria for a disability retirement under the terms of the Pension Plan as of October 28, 1994." (Appellant's App. at A161.) Nearly a year later, on June 26, 1998, Cavegn filed the instant action in federal district court seeking to recover the disputed retroactive pension benefits from the plan. (Appellant's App. at A12.) Both parties filed motions for summary judgment. Ruling from the bench, the district court denied Cavegn's motion and awarded summary judgment to the plan. Without deciding the merits of the underlying action, the district court concluded that Cavegn's claims were barred by a two-year statute of limitations. Cavegn appeals to this court.

## II.
## Discussion

We review a district court's summary judgment determinations de novo, and we apply the same standards as the district court. See Treanor v. MCI Telecomms. Corp., 200 F.3d 570, 573 (8th Cir. 2000).

### A.      Statute of Limitations

ERISA contains no statute of limitations governing claims for plan benefits. See Adamson v. Armco, Inc., 44 F.3d 650, 652 (8th Cir.), cert. denied, 516 U.S. 823 (1995). Consequently, courts must "borrow" the statute of limitations from the most analogous state law. See id. In determining the most analogous state law, we regard ERISA benefit claims as contract actions. See Bennett v. Federated Mut. Ins. Co., 141 F.3d 837, 838 (8th Cir. 1998). Hence, state contract law provides the applicable statute of limitations. In this case, the most analogous Minnesota law is Minn. Stat. § 541.07(5) (Supp. 2000), which provides for a two-year statute of limitations in contract actions for unpaid benefits. See Adamson, 44 F.3d at 652-53; Kiefer v. Ceridian Corp., 976 F. Supp. 829, 841 (D. Minn. 1997). Cavegn filed this ERISA action on June 26, 1998. In accordance with Minn. Stat. § 541.07(5), Cavegn's claims are barred if they accrued prior to June 26, 1996.

While statute of limitations questions for ERISA benefit claims are governed by state law, the question of claim accrual is controlled by federal law. See Bennett, 141 F.3d at 838. A cause of action for plan benefits under ERISA accrues after a plan fiduciary has formally denied an applicant's claim for benefits or "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiary." Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 330 (8th Cir.) (citations omitted), cert. denied, 525 U.S. 817 (1998).

The plan trustees in this case argue that Cavegn's cause of action accrued on October 30, 1995, which is the date that the plan administrator formally denied Cavegn's request for benefits. They further contend that the latest possible accrual date is May 31, 1996, which represents the day that the trustees affirmed the administrator's denial of Cavegn's application. Both of the trustees' suggested accrual dates fall prior to June 26, 1996. Hence, the trustees maintain, Cavegn's lawsuit is barred by Minnesota's two-year statute of limitations.

Cavegn argues that his cause of action accrued at the earliest on January 28, 1997. He contends that his October 1996 request for benefits was a new application and that his cause of action with regard to that application did not accrue until the plan administrator formally rejected his request. The plan trustees, in contrast, urge this court to reject Cavegn's new application argument. They contend that Cavegn's new application position runs contrary to our decision in <u>Mason v. Aetna Life Ins. Co.</u>, 901 F.2d 662 (8th Cir. 1990). In <u>Mason</u>, we upheld a district court's conclusion that a plan administrator's eventual reconsideration of a beneficiary's application did not toll the applicable statute of limitations. <u>See</u> <u>id.</u> at 664. The trustees argue that despite Cavegn's characterization of the October 1996 petition as a new application, the administrator in this case, like the administrator in <u>Mason</u>, simply engaged in a reconsideration of Cavegn's earlier requests; a reconsideration our cases encourage. We disagree.

In his January 28, 1997, letter to Cavegn, the plan's administrator, Mr. Hynes, specifically stated that the trustees were treating Cavegn's October 1996 application as a new application for benefits. By its very meaning, a new application is different and separate from any previous application. It is not a reconsideration of an old application or a reevaluation of a prior claim. If the trustees were simply engaging in a reconsideration of an old application, Hynes could have conveyed such a message in clear and unambiguous terms. On the contrary, however, Hynes's letter conveys a much different message. In plain language, it clearly and unambiguously states that the

-5-

trustees are treating Cavegn's request as a new application for plan benefits. We take Mr. Hynes at his word.

We assume that Hynes understood the plain meaning of ordinary words and concepts. We also assume that the trustees actually did treat Cavegn's October 1996 application as a new application for benefits. Accordingly, Cavegn's cause of action arising from the October 1996 application did not accrue until the trustees formally denied the application. The trustees formally denied Cavegn's application on January 28, 1997. The denial date is well within the applicable two-year statute of limitations. Hence, we reverse the district court's decision granting summary judgment to the plan trustees on the statute of limitations issue.

Our conclusion would be the same if we were to consider the accrual date to have been the August 7, 1997, letter denying Mr. Cavegn's request for pre-November 1, 1996, benefits, which request he made after benefits had been awarded to him. The dispute in this lawsuit is whether Mr. Cavegn is entitled to benefits pre-dating November 1, 1996, not whether he is entitled to any benefits.

## B.    Merits of the Dispute

In granting the plan trustees' motion for summary judgment on the statute of limitations issue, the district court did not reach the underlying merits of the dispute. Despite the fact that the district court did not decide the underlying issues in the first instance, both parties ask us to resolve the merits of this action. The parties explain that the question of whether Cavegn should receive retroactive benefits calls for a legal conclusion, and that we typically review legal conclusions de novo. As de novo review is not deferential to the district court, the parties contend that it is irrelevant as to which court examines the issues in the first instance. The parties fundamentally confuse and misconstrue the distinct roles of the federal courts.

We are a court of appeals.  See 28 U.S.C. §§ 41 and 43.  As a court of appeals, we review the final decisions of district courts.  See 28 U.S.C. § 1291.  Except for jurisdictional questions, we do not usually address issues that have not been considered by a district court regardless of the standard of review we use to decide the case.  The fact that an issue eventually will be reviewed de novo does not alter our jurisdiction or allow us to assume a role reserved for the district court.  De novo review may be nondeferential to the district court, but it is still a form of review.  A standard of review does not equate with a grant of original jurisdiction.  In fact, every act that we undertake as a court involves the process of review.  Such is our jurisdictional function. See id.  The district courts decide federal questions in the first instance, see 28 U.S.C. § 1331, and we review their decisions.  See 28 U.S.C. § 1291. Hence, we will remand this case to allow the district court its rightful opportunity to address the merits of Cavegn's ERISA claim.

### III.
### Conclusion

For the reasons stated above, we reverse the judgment of the district court.  We remand this case to the district court for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-