**Jean E. WOLFE, Plaintiff,**

v.

**3M SHORT–TERM DISABILITY PLAN and 3M Long–Term Disability Plan, Defendants.**

**No. Civ. 99–1902 JRT/FLN.**

United States District Court, D. Minnesota.

Sept. 25, 2001.

---

Katherine L. MacKinnon, Mackinnon Law Office, St. Louis Park, MN, and Matthew B. Newman, Newman Law Office, Savage, MN, for plaintiff.

Paul W. Heiring, Steven L. Severson, and Deborah A. Ellingboe, Faegre & Benson, LLP, Minneapolis, MN, for defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

Plaintiff brings this action against 3M's Short–Term and Long–Term Disability Plans, contending that defendants unlawfully denied plaintiff disability benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants have moved for summary judgment on the basis that plaintiff's ERISA claim is barred by the two-year statute of limitations. For

the reasons that follow, the Court denies defendants' motion.

## BACKGROUND

Because this is a motion for summary judgment, the Court presents the facts in the light most favorable to plaintiff, the nonmovant. Plaintiff began working at 3M on January 5, 1987 as a programmer in 3M's Information Technology department. Prior to joining 3M, plaintiff was diagnosed with multiple schlerosis ("MS"). 3M knew of plaintiff's illness while working at 3M and made accommodations for her condition. In September 1994, plaintiff's position was eliminated. Pursuant to 3M policy, plaintiff was placed on unassigned status effective September 30, 1994, which gave plaintiff six months to find another position within the company or face termination. Plaintiff failed to find another position and her employment with 3M was formally terminated on March 29, 1995.

In April 1996, plaintiff contacted 3M requesting information on 3M's long-term disability benefits plan. By letter dated April 30, 1996, Lee Buzay, a senior paralegal in 3M's Office of General Counsel, responded to plaintiff's request as follows:

This is in response to your request for a 3M Long Term Disability Program booklet. Because you are no longer a 3M employee and, as such, not entitled to these benefits, we cannot comply with your request.

On May 6, 1996, plaintiff wrote to Magda Higgins, a 3M Benefits Administrator, again requesting that 3M provide her with a copy of a disability plan booklet. Although the facts are not entirely clear on this point, it appears that Higgins at some point contacted plaintiff and told her to communicate with Buzay. On June 11, 1996, plaintiff wrote to defendants, informing them that she was "taking an appeal from [3M's] decision that I am not entitled to long term disability benefits because [I] am not a 3M employee." Higgins testified in her deposition that she received a copy of plaintiff's June 11, 1996 letter, upon which she made the following notation to her supervisor: "Barb: I could not find any info pertaining to denial of STD/LTD benefits. She did file an EOC charge—attached is a copy of Dick's response. Magda."

On November 13, 1997, Matthew Newman, one of plaintiff's attorneys in this action, wrote defendants on plaintiff's behalf explaining that plaintiff never received a response to her June 11, 1996 letter. Newman emphasized that plaintiff's claim for benefits is based on her contention that she was disabled while still employed with 3M, that she is entitled to have her claim heard by plan administrators, and that if necessary, plaintiff would bring suit to enforce her rights under the terms of the plan.[1] On February 5, 1998, after being told that defendants could not locate the November 13, 1997 letter, Newman wrote to Higgins again, enclosed the November 13, 1997 letter and again requested that defendants administer plaintiff's claim for benefits.

On February 9, 1998, Davis Shryer, 3M's Disability Programs Administrator, responded to Newman's February 5, 1998 letter. This letter provides, in its entirety:

Your February 5, 1998 letter to Magda Higgins has been referred to me for reply. Note that Ms. Higgins is not currently available to respond to your letter.

We are in the process of gathering what information we have related to your concerns. I will be in contact after I have

---

1. Newman made clear in his letter that the lawsuit would not be an action to recover benefits due under the terms of the plan, but rather to simply require defendants to administratively process plaintiff's claim.

had an opportunity to determine what information might be needed to review these issues.

Thank you for your patience with this matter.

When five months passed without communication from 3M, Newman wrote Shryer on July 6, 1998, inquiring about the status of plaintiff's claim. When 3M did not respond, Newman wrote Shryer again on August 26, 1998, asking for a response.

On September 10, 1998, Shryer and Newman spoke on the telephone regarding plaintiff's claim. A September 14, 1998 confirmation letter from Newman to Shryer reveals that Shryer asked Newman to gather medical information showing that plaintiff had MS while she was employed with 3M. Less than a month later, Newman supplied Shryer with a detailed letter and enclosures of the requested medical information pertaining to plaintiff's claim.

Shryer and Newman spoke again by telephone on December 29, 1998, at which time Shryer indicated that he intended to deny plaintiff's claim. When Newman did not receive a written denial of plaintiff's claim, as required under ERISA and its regulations, Newman wrote Shryer on January 14, 1999 and again on January 28, 1999 requesting a written denial.

On February 18, 1999, Shryer sent the denial letter to Newman. In the letter, Shryer explains that plaintiff's claim for long-term disability benefits is denied because she did not exhaust short-term disability benefits under the 3M plan while she was a 3M employee and thus did not qualify for long-term disability benefits. Shryer also explained that plaintiff's request for long-term benefits was made after her termination and therefore she was no longer eligible for such benefits. The letter concluded by advising plaintiff of her right to appeal her claim:

Ms. Wolfe is entitled to a review of her claim for benefits. If she would like a review, please provide us with any additional documentation to support that review, including all relevant medical documentation. This information should be sent to my attention, and she will receive a prompt reply, including any request for clarification needed.

On March 17, 1999 Newman wrote to Shryer requesting a copy of plaintiff's administrative file in order to effectively prepare plaintiff's appeal. After receiving no response, Newman made two additional requests for plaintiff's file, once on April 5, 1999 and again on May 3, 1999. On July 19, 1999, Scott Burback, a 3M Case Management Supervisor for 3M's Disability Benefit Programs, responded to Newman's May 3, 1999 letter. Burback informed Newman that because plaintiff never submitted a claim for disability benefits while she was employed by 3M, there was no "administrative file" to speak of. Instead, Burback enclosed a copy of documents pertaining to plaintiff's termination of employment with 3M. The letter concluded by stating:

If you still believe that Ms. Wolfe is entitled to LTD benefits after reviewing these documents, please forward a written notice of appeal to me within 60 days after the date of this letter. I will then arrange for the Plan Administrator of 3M's Long-Term Disability Plan to review and consider this appeal.

By letter dated August 12, 1999, plaintiff appealed defendants' denial of her claim. When defendants failed to respond within 60 days as required under ERISA regulations, plaintiff's appeal was deemed denied on October 11, 1999. Plaintiff commenced this action on November 29, 1999.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-

ment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *See id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *See Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir.1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *See Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir.1981).

## II. Statute of Limitations

ERISA does not contain its own statute of limitations period. *Adamson v. Armco, Inc.*, 44 F.3d 650, 652 (8th Cir.1995). As a result, courts must borrow the most analogous state statute of limitations. *Id.* The parties agree that the two-year statute of limitations contained in Minn.Stat. § 541.07(5) applies in this case. *Id.* at 652–53; *Cavegn v. Twin City Pipe Trades Pension Plan*, 223 F.3d 827, 830 (8th Cir. 2000) (applying two-year statute of limitations from Minn.Stat. § 541.07(5) to plaintiff's ERISA claim).

■ Although courts look to state law for determining the applicable statute of limitations period, federal common law controls the question of claim accrual. *Bennett v. Federated Mutual Ins. Co.*, 141 F.3d 837, 838 (8th Cir.1998). As a general rule, a cause of action under ERISA accrues "after a claim for benefits has been made and has been formally denied." *Union Pacific R.R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir.1998). But the Eighth Circuit has recognized an exception to this general rule:

> [A]n ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed, "when there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiar[y]."

*Id.* at 330 (quoting *Miles v. New York State Teamsters Conf. Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir.1983); *Cavegn*, 223 F.3d at 830).

Defendants argue that plaintiff's right to disability benefits was clearly repudiated in the April 30, 1996 letter when Buzay informed plaintiff, in response to her request for a long-term disability plan booklet, that she was "not entitled to these benefits." Although defendants subsequently reviewed plaintiff's benefits claim, defendants maintain that this action was no more than a reconsideration of plaintiff's claim which did not renew the limitations period. Defendants further contend

that there is no basis for application of either equitable tolling or equitable estoppel in this case. Thus, according to defendants, plaintiff's claim accrued on April 30, 1996 and expired two years later on April 30, 1998. Because plaintiff did not file suit until November 29, 1999, her ERISA claim is time-barred.

Plaintiff maintains that the April 30, 1996 letter was not a repudiation of plaintiff's right to benefits. According to plaintiff, the letter was neither clear, unequivocal, continuous nor made by a plan fiduciary as required under *Beckham* and its progeny. As a result, plaintiff's ERISA claim accrued on October 11, 1999, when defendants formally denied her claim for benefits. Thus, the filing of plaintiff's lawsuit on November 11, 1999 was timely.

### A. Repudiation of Benefits

■ The first issue is whether plaintiff's ERISA claim accrued on April 30, 1996. Under *Beckham* and as previously stated, "an ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed, 'when there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiar[y].'" *Beckham*, 138 F.3d at 330; *Bennett*, 141 F.3d at 839.[2]

■ The Court finds that the April 30, 1996 letter contained a clear repudiation of plaintiff's right to benefits and that this repudiation was made known to plaintiff. The letter unequivocally told plaintiff that she was "not entitled to [long-term disability] benefits." Even though plaintiff contacted 3M only to request a plan booklet, defendants response to plaintiff's request clearly and unequivocally informed her that she was not eligible for such benefits.

Defendants' repudiation was also made known to plaintiff, as evidenced by plaintiff's June 11, 1997 letter, in which she states that "[t]his letter is to take an appeal from a decision that I am not entitled to long term disability benefits because [I] am not a 3M employee."

Plaintiff's strongest argument that the repudiation was ineffective is that the letter was prepared and sent by a paralegal in 3M's Office of General Counsel rather than from the plans themselves. *Beckham*, 138 F.3d at 330 (ERISA claim can accrue "when there has been a repudiation **by the fiduciary** which is *clear* and made known to the beneficiar[y]") (emphasis added). The Eighth Circuit, however, has recognized repudiations based on communications from an employer despite the plain language of the *Beckham* test. *Bennett*, 141 F.3d at 838–39 (letter from employer at time of termination constituted clear repudiation of plaintiff's right to benefits); *Beckham* 138 F.3d at 328 (fact sheets from company constituted clear repudiation of plaintiff's right to benefits). Thus, on this record, the Court finds that the April 30, 1996 letter repudiated plaintiff's right to disability benefits, thus triggering the two-year limitations period.

### B. Timeliness of Plaintiff's Claim

Even though the Court finds that plaintiff's cause of action accrued on April 30, 1996, plaintiff argues that her claim is nevertheless timely because: 1) defendants reversed their earlier repudiation when they agreed to consider plaintiff's claim anew in February 1998, thus triggering a new limitations period; 2) plaintiff's cause of action was tolled while defendants administrated plaintiff's benefits claim;

**2.** Although plaintiff suggests that the repudiation must also be "continuing," the Eighth Circuit has not specifically included this requirement in its articulation or analysis of the

*Beckham* test. To date, the "continuing" language has only appeared in the parentheticals to case citations in decisions such as *Beckham*.

and 3) equitable estoppel precludes defendants from asserting a statute of limitations defense. For the reasons provided below, the Court finds that equitable tolling precludes summary judgment in defendants' favor.

### 1. Equitable Tolling

Plaintiff argues that even if April 30, 1996 is the accrual date, the Court should toll the limitations period while defendants administratively processed plaintiff's claim. To support this argument, plaintiff emphasizes that ERISA substantive law required her to first exhaust her administrative remedies before filing suit in federal court. Matthew Newman, plaintiff's counsel at the time, clearly understood this requirement as evidenced by his November 13, 1997 and February 5, 1998 letters. In both letters, Newman reminded defendants of their obligation to administratively review plaintiff's claim and expressly asked defendants to process plaintiff's claim. Plaintiff points out that had Newman not pursued this avenue and instead filed plaintiff's claim in federal court, plaintiff's case would have been immediately subject to dismissal by defendants for plaintiff's failure to exhaust her administrative remedies. Newman's actions were therefore entirely reasonable and understandable. Plaintiff thus argues that "stopping the clock" while defendants administratively processed plaintiff's claim is appropriate, would encourage the full and fair administrative process of claims by those most well-equipped to consider these often complex issues and would further the principle of exhausting administrative remedies.

Plaintiff advances a persuasive argument for tolling the limitations period in this case. Although ERISA does not contain an explicit exhaustion of remedies requirement, ERISA does provide that all benefit plans shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). Additionally, ERISA regulations provide: "Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary ... under which a full and fair review of the claim and its denial may be obtained." 29 C.F.R. § 2560.503–1(g)(1).

These provisions have led courts to conclude that "a claimant must exhaust the administrative remedies provided by a plan or policy before an action may be brought under § 1132 for denial of benefits." *Mitchell v. Shearson Lehman Brothers, Inc.,* No. 97–CIV 0526, 1997 WL 277381 at *4 (S.D.N.Y.1997); *Kennedy v. Empire Blue Cross Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993). The Eighth Circuit has reached the same conclusion and has dismissed cases for failure to exhaust internal administrative remedies under ERISA. *Burds v. Union Pacific Corp.,* 223 F.3d 814, 817 (8th Cir.2000) ("It is well-established that when exhaustion is clearly required under the terms of an ERISA benefits plan, the plan beneficiary's failure to exhaust her administrative remedies bars her from asserting any unexhausted claims in federal court."); *Layes v. Mead Corp.,* 132 F.3d 1246, 1252 (8th Cir.1998); *Conley v. Pitney Bowes,* 34 F.3d 714, 718 (8th Cir.1994) ("Exhaustion is a very important concept in our jurisprudence, with deep roots in the principles of federalism and comity.").

In requiring plaintiffs to first exhaust internal remedies under ERISA, several courts have recognized the appropriateness of tolling the statute of limitations during this period. *Mitchell,* 1997 WL 277381 at *4–6; *Hoffman v. Central*

*States Southeast & Southwest Areas Pension Fund,* No. 90 C 4132, 1992 WL 336376 at *9 (N.D.Ill. May 8, 1992) (noting that "a policy favoring exhaustion of remedies is undermined unless the statute of limitations is tolled during the period of exhaustion").[3] These courts obviously recognize the procedural quagmire that plaintiff alludes to in her argument if tolling is not applied. If a plaintiff files her complaint to avoid the running of the limitations period but prior to fully exhausting her internal remedies, she risks dismissal of her claim for failure to exhaust her administrative remedies. Conversely, a plaintiff who exhausts her internal remedies as required under the plan itself, ERISA and applicable caselaw, there is a risk that, absent tolling, the limitations period will expire before she files suit in federal court. In *Mitchell,* the district court aptly described the unfairness that could result to a plaintiff if the limitations period is not tolled while a plaintiff exhausts her internal remedies:

> [A]ccrual upon initial denial and tolling while the claimant exhausts internal remedies, avoids unfairness to the plaintiff. If a claim accrued upon the initial denial of benefits and the limitations period continued to run, the limitations period effectively would be shortened because the plaintiff would not [be] permitted to sue on a claim until he had exhausted his internal remedies. Such a result would be unfair because a plaintiff

would be deprived of the full benefit of the limitations period.

1997 WL 277381 at *5.

Defendants' reliance on *Bennett* and *Cavegn* for the proposition that an employer's subsequent administrative review of plaintiff's claim does not toll the statute of limitations is unpersuasive. Equitable tolling was not raised in either case. While equitable tolling was addressed and rejected in *Mason v. Aetna Life Ins. Co.,* 901 F.2d 662 (8th Cir.1990), another case relied on by defendants, the factual circumstances in *Mason* are unlike those present here. In *Mason,* the plaintiff asked the court to toll the limitations period three years after plaintiff had fully exhausted her administrative remedies and during which time "Aetna had done nothing to suggest her claim was still under review." 901 F.2d at 664.

Finally, defendants argue that even if the Court were inclined to apply equitable tolling in this case, the doctrine does not save plaintiff's claim because defendants did not begin to administer plaintiff's claim until September 10, 1998 at the earliest. By then, defendants argue, the limitations period had already expired in April 1998. Plaintiff argues that defendants began to administer plaintiff's claim on February 9, 1998 when Shryer responded to plaintiff's February 5, 1998 letter requesting that defendants process plaintiff's claim.

---

**3.** Courts have recognized equitable tolling principles in other areas of law as well where exhaustion of administrative remedies is a prerequisite to filing suit in federal court. *Kolomick v. United Steelworkers of Amer., Dist. 8, AFL–CIO,* 762 F.2d 354, 356 (4th Cir.1985) (noting that "filing of a complaint with an administrative agency normally tolls the period within which a subsequent court action must be brought"); *Trent v. Bolger,* 837 F.2d 657, 659 (4th Cir.1988) (hybrid wrongful discharge-fair representation claim tolled during exhaustion of administrative remedy). Toll-

ing also applies in the class action context during the period when putative class members await a determination whether a class will be certified. *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) ("the commencement of an original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court found the suit inappropriate for class action status"); *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 352–53, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (same).

■ This issue is factually in dispute. Viewing the facts in the light most favorable to plaintiff, the Court believes that a reasonable jury could find that defendants began processing plaintiff's claim in February 1998, in which case, the tolling of the limitations period during this administrative process (2/9/98 until 10/11/99) would make the filing of plaintiff's action one month later timely.[4] Accordingly, because the Court cannot determine as a matter of law that plaintiff's ERISA claim is time-barred, defendants' motion for summary judgment is denied.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Docket No. 15] is **DENIED.**

---

4. Because the Court finds that a triable issue of fact exists as to whether equitable tolling applies, the Court need not now address the other arguments raised by plaintiff concerning the timeliness of her claim.