# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-1535

_____

Bernard Cavegn,

               Appellant,

    v.

Twin City Pipe Trades Pension Plan,

               Appellee.

\*
\*
\*
\*    Appeal from the United States
\*    District Court for the
\*    District of Minnesota.
\*
\*
\*         [PUBLISHED]
\*

_____

Submitted: December 12, 2002
Filed: June 27, 2003

_____

Before HANSEN, Chief Judge, HEANEY and BYE, Circuit Judges.

_____

HANSEN, Circuit Judge.

Bernard Cavegn obtained an award of disability retirement benefits from the Twin City Pipe Fitters Pension Plan (the Plan), but he appealed, challenging the trustees' determination of the date he became totally and permanently disabled within the meaning of the Plan. The Plan denied his appeal, and Cavegn brought this suit to recover retroactive disability retirement benefits pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (2000).

The district court[1] granted summary judgment to the Plan. Cavegn appeals, and we now affirm.

I.

This is the second appeal in this case. The prior appeal involved a statute of limitations dispute. We held that the action was not time barred, and we remanded for further proceedings to allow the district court to consider the merits of the ERISA claim in the first instance. Cavegn v. Twin City Pipe Trades Pension Plan, 223 F.3d 827 (8th Cir. 2000). The facts are fully set forth in our prior opinion, see id. at 828-29, but we will nevertheless restate the facts relevant to this appeal.

Cavegn suffered a back injury on October 28, 1994, while working as a pipefitter for the University of Minnesota. He decided to retire from active employment and applied for a disability pension and health care benefits under his ERISA Plan. The Plan's trustees denied this claim. The trustees also denied Cavegn's subsequent claim for disability benefits based on the same injury. In each instance, the trustees concluded that Cavegn had failed to establish that he was totally and completely disabled within the meaning of the Plan. Cavegn appealed these decisions, but he remained unsuccessful in his attempts to obtain disability retirement benefits under the Plan during 1995 and 1996.

The evidence presented to the trustees in support of Cavegn's applications for benefits indicated that Cavegn's treating physicians and a consulting physician were all of the opinion that he was not disabled at that time but capable of light-duty work with certain lifting and moving restrictions. Although he was released for light-duty

---

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

work, Cavegn did not return to work because nothing suitable was available for him at the University of Minnesota, and he could not find an alternate job.

During the summer of 1996, Cavegn returned to the University of Minnesota to participate in a work hardening program that accommodated his physical needs. He worked only two hours per day. Despite the accommodations, Cavegn said his condition worsened. He injured his back in the thoracic area while working on September 24, 1996. Thereafter, he was not able to return to work, and he obtained disability benefits from the Social Security Administration.

In October 1996, Cavegn again requested benefits from the Plan. The trustees considered this a new application and ordered a new assessment and functional capacity evaluation. The evaluator concluded that although Cavegn retained the ability to perform gainful work activity, his behavior and attitude would effectively preclude him from being hired by most, if not all, employers. On January 28, 1997, the trustees denied this application for disability benefits, stating that they had considered all of the information, including the vocational assessment and the Social Security ruling, which is not determinative. The trustees concluded that Cavegn did not meet the definition of total and permanent disability found in the Plan.

In March of 1997, Dr. Steven Trobiani examined Cavegn and concluded that, absent surgery to remove a ruptured disc, he could not be employed and should be considered permanently and totally disabled. Cavegn appealed the Plan's most recent denial of benefits and included Dr. Trobiani's assessment in his appeal. The trustees considered the new evidence and reversed their prior decision. They awarded a disability pension retroactive to November 1, 1996, concluding that Cavegn had been permanently disabled as of October 1996.

Cavegn appealed the trustees' determination of the starting date of his pension benefits. He sought a determination that he was disabled as of the date of his original

3

injury on October 28, 1994. The trustees denied the appeal, concluding that Cavegn had failed to demonstrate that he met the criteria for a disability retirement under the Plan on the date of his injury.

Cavegn then filed this ERISA action in federal court, seeking to recover retroactive pension benefits from the date of his injury through November 1996, the effective date of the trustees' award. Initially, the district court concluded that the action was barred by the statute of limitations, and Cavegn appealed to this court. We reversed, concluding that the action was timely, and we remanded for further proceedings. See Cavegn, 223 F.3d at 831.

On remand, the district court considered the merits of the parties' cross-motions for summary judgment and granted summary judgment to the Plan finding no abuse of discretion. The district court concluded that the Plan's trustees properly interpreted the Plan and that their determination that Cavegn was disabled as of October 1996 was not arbitrary and capricious. Cavegn appeals.

II.

Cavegn argues that the trustees and the district court improperly interpreted the language of the Plan. We review de novo the district court's grant of summary judgment. Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1196 (8th Cir. 2002). We also review de novo the denial of benefits under an ERISA plan unless the benefit plan grants the plan administrator discretionary authority to determine eligibility for benefits or to construe the plan. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Tillery, 280 F.3d at 1196-97. When the plan grants such discretionary authority, we review the plan administrator's benefits decision and plan interpretation for an abuse of discretion. Tillery, 280 F.3d at 1197. In this case, the Plan grants discretionary authority to the plan administrator (the trustees) to determine the application and interpretation of the Plan. (Appellant's App. at 286

4

(stating in section 6.03(a) that the trustees shall "be the sole judges of the standard of proof required in any case in the application and interpretation of this Plan").) Therefore, we review the trustees' decision interpreting the Plan and denying additional retroactive benefits for an abuse of discretion.

The Plan in this case provides in pertinent part as follows:

Section 3.10 Disability Pension Amount
    The monthly amount of the Disability Pension is the same as the Regular Pension before any adjustment for a Qualified Joint and Survivor Annuity Pension and will become payable on the first of the month which follows six months <u>from the date the Participant became totally and permanently disabled</u>.

(Appellant's App. at A-255 (emphasis added).) In August 1996, the trustees amended this provision of the Plan to eliminate the six-month waiting period for benefits, permitting benefits to be payable the month after the trustees determined that the individual satisfied the Plan's criteria of being totally and permanently disabled. (Appellant's App. at A-120, A-131.)

The Plan also provides:

Section 3.11 Definition of Total and Permanent Disability
    A participant who applies for a Disability Pension shall be deemed to be permanently and totally disabled only if the Trustees, in their sole and absolute discretion, find on the basis of medical evidence that:
(a) he has been <u>totally disabled</u> by bodily injury or a physical or mental condition so as to be prevented from engaging in further work in any job classification of the type specified in the Collective Bargaining Agreement . . . ;
(b) such disability will be permanent and continuous for the remainder of his life; and

5

(c) he is <u>unable to engage in gainful employment</u> of any kind except for activity of a type other than that specified in the Collective Bargaining Agreement at which he is able to earn less than $600.00 per month.

(Appellant's App. at A-255-56 (emphasis added).)

The trustees determined that Cavegn was disabled within the meaning of this criteria as of October 1996 and that his pension benefits were payable as of November 1, 1996. Cavegn argues that the trustees abused their discretion by not finding that he was entitled to benefits as of May 1995, six months after his October 28, 1994, disabling injury.[2] We find no abuse of discretion.

The decision that Cavegn was totally disabled in October 1996 is supported by the evidence demonstrating that Cavegn was unable to return to the work hardening program following an injury in September 1996 and the evidence of Dr. Trobiani's March 1997 report, stating the opinion that absent surgery, Cavegn should be considered totally disabled. Prior to this report, all doctors had concluded that Cavegn was capable of at least part-time, light-duty work. Thus, the trustees' decision was supported by the evidence, and they did not abuse their discretion by determining that Cavegn was disabled in October 1996 and entitled to benefits payable as of November 1, 1996.

Cavegn asserts that the Plan's language required the trustees to conclude that he was "totally and permanently disabled" as the date of his October 1994 injury.

---

[2]The Plan amendment eliminating the six-month waiting period was not adopted until August 1996. (Appellant's App. at A-120.) In Cavegn's reply brief, he challenges the validity of this amendment, but we decline to address arguments raised for the first time in a reply brief. <u>See</u> <u>Mahoney v. Warren County</u>, 206 F.3d 770, 771 n.2 (8th Cir. 2000).

Under the arbitrary and capricious or abuse of discretion standard,[3] we will uphold the trustees' discretionary decision interpreting the Plan if that decision is reasonable. Finley v. Special Agents Mut. Ben. Ass'n, 957 F.2d 617, 621 (8th Cir. 1992) (citing Bruch, 489 U.S. at 111). To determine if the trustees' interpretation of the Plan was reasonable, we consider (1) whether that interpretation is consistent with the goals of the Plan, (2) whether it renders any language of the Plan meaningless or inconsistent, (3) whether it conflicts with the requirements of ERISA, (4) whether the trustees have interpreted words at issue consistently, and (5) whether their interpretation is contrary to the clear language of the Plan. Id.

Applying the Finley factors, we conclude that the trustees' interpretation is reasonable. First, the trustees' interpretation of the Plan is consistent with the Plan's goal of providing a disability pension to participants who become permanently and totally disabled. The trustees provided disability benefits to Cavegn beginning the month after he demonstrated that he was totally and permanently disabled within the language of the Plan.

Second, the trustees' interpretation renders no portion of the Plan meaningless or inconsistent. Instead, the trustees reasonably refused to allow benefits to be paid to Cavegn until there was evidence in the record that he satisfied the Plan's specific criteria. The Plan's definition of permanently and totally disabled in Section 3.11 requires a showing that the participant's injury prevented him from engaging in further work and that he was unable to engage in gainful employment earning at least $600.00 per month. The trustees granted benefits when they concluded that the medical evidence supported such a determination. Cavegn's own treating physicians and a consulting physician all agreed that he was not totally disabled in October 1994

---

[3]We make no distinction between review for an abuse of discretion and the arbitrary and capricious standard. See Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 946-47 n.4 (8th Cir. 2000).

7

and that he remained capable of working at least a part-time, light-duty job throughout 1995 and most of 1996. As noted by the district court, the work hardening program at the University of Minnesota that Cavegn participated in during the summer of 1996 would have paid more than the $600.00 per month requirement had he chosen to work four hours a day rather than two. His doctors believed he was capable of engaging in this gainful employment. The trustees' decision to grant benefits as of November 1, 1996, was based on "information contained in [Cavegn's] social security award, information from various medical providers, and the findings from the vocational expert . . . and [his] current employment status and prospects for alternative employment." (Appellant's App. at A-171.) These sources of information contain evidence that Cavegn had further injured himself in September 1996 and was subsequently unable to return even to part-time work, and Dr. Trobiani's opinion that absent surgery, he should be considered totally disabled. No portion of the Plan is rendered meaningless by the trustees considering all the evidence and making a reasonable determination of when Cavegn became totally and permanently disabled.

We see nothing in the trustees' grant of benefits or refusal to award retroactive payments that conflicts with the requirements of ERISA–the third Finley factor. Also, we have no basis on which to consider the fourth factor.

Finally, the trustees' interpretation is not contrary to the clear language of the Plan as expressed in Sections 3.10, as amended, and 3.11. Cavegn seems to argue that the Plan does not grant the trustees discretion to set the commencement date for disability benefits because that date is specified in section 3.10 as the date of his injury. The clear language of the Plan, however, does not equate in all cases the date of an injury with total and permanent disability. A finding of total disability is permitted only upon consideration of the criteria specifically listed in Section 3.11. The trustees have the "sole and absolute discretion" to determine, based on the evidence, whether a participant has demonstrated that he is within the Plan's definition of total and permanent disability as specified in section 3.11. (Appellant's

8

App. at A-255.) The trustees' determination that Cavegn demonstrated he was disabled as of October 1996, but not as of October 1994, is not contrary to the clear language of the Plan.

To the contrary, Cavegn's attempt to equate the date of his October 1994 injury with the date he became "totally and permanently disabled" under the Plan language, without any consideration of his residual ability to engage in gainful employment would be contrary to the clear language of the Plan and would render meaningless the provision in Section 3.11 which specifically requires such an inquiry. The Plan entitles an eligible participant to disability benefits from the date of total and permanent disability, which may or may not, depending on the facts of each case, be the date of a particular injury. In any case, the Plan language in Section 3.11 requires a consideration of evidence demonstrating the participant's inability to work in order to receive benefits. Cavegn asserts that his injury was disabling at the time it occurred in October 1994, but on the evidence presented, we conclude that the trustees did not abuse their discretion in determining that Cavegn was not totally and permanently disabled on October 28, 1994.

To the extent Cavegn raised additional arguments not specifically addressed herein, we find them to be without merit and not worthy of further discussion.

III.

We conclude that the trustees did not abuse their discretion in interpreting the Plan language or determining that Cavegn was not entitled to additional retroactive benefits. Accordingly, we affirm the judgment of the district court.

9

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.