# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2328MN

_____

| | | |
|---|---|---|
| Hubert Back, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | On Appeal from the United |
| | * | States District Court |
| | * | for the District of |
| Danka Corporation; Danka Office | * | Minnesota. |
| Imaging Company; and Danka | * | |
| Corporation Severance Pay Plan, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 14, 2003

Filed: July 14, 2003

_____

Before WOLLMAN, RICHARD S. ARNOLD, and SMITH, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Hubert Back, the plaintiff in this case, worked for twenty-seven years for Danka Corporation, one of the defendants, and its corporate predecessors, Eastman Kodak Company and IBM. In 1997, Mr. Back suffered a work-related injury to his shoulder. He filed a claim for workers' compensation benefits. He never returned to active employment. Mr. Back brings this action against Danka and related entities. Two claims are presented on this appeal: wrongful withholding of severance pay, in

violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., and retaliatory discharge, in violation of Minn. Stat. § 176.82.

The District Court granted defendants' motion for summary judgment. As to the ERISA claim, the Court held that Mr. Back had not exhausted his administrative remedies. He never filed a written application for benefits, as required by Article 5.5(a) of Danka's severance-pay plan. The retaliatory-discharge claim was dismissed on the ground that the plaintiff had not produced sufficient evidence of a causal connection between his claim for workers' compensation benefits and his discharge. We affirm in part and reverse in part.

As to the ERISA claim, it is undisputed that Article 5.5(a) of Danka's severance-pay plan (assuming for the moment that this plan is the applicable governing document) requires applicants for severance pay to file a written application for benefits. Mr. Back never did this. He says, and it is also undisputed, that he was never informed either that this remedy existed, or that he would be required to invoke it. Defendants agree that Mr. Back was never given a copy of the Danka severance-pay plan, nor did he receive a Summary Plan Description. The District Court observed, however, that, after filing this action Mr. Back was fully informed of internal plan remedies, and yet made no effort to pursue them. For this reason, in the view of the District Court, the doctrine of exhaustion of remedies barred the action, and the ERISA claim was dismissed. (Presumably, this dismissal would be without prejudice, leaving Mr. Back with the option of asserting an internal claim under Article 5.5(a) and, if the claim did not succeed, returning to court with a new action under ERISA.)

The doctrine of exhaustion of administrative remedies serves important purposes. It enables an employer, or its plan, to obtain full information about a claim for benefits, to compile an adequate record, and to make a reasoned decision. The process is of substantial benefit to reviewing courts, because it gives them a factual

predicate upon which to proceed. Nonetheless, we respectfully disagree with the District Court's holding in this case. Danka's failure to inform Mr. Back of the available and required internal remedy was a violation of ERISA. 29 U.S.C. § 1022(b). We have held that in similar circumstances the exhaustion doctrine does not apply. See Conley v. Pitney Bowes, 34 F.3d 714, 717-18 (8th Cir. 1994). Certainly Danka is now fully informed of the details of Mr. Back's claim, and some substantial consequence should follow from Danka's failure to apprise Mr. Back of the exhaustion requirement. Accordingly, the dismissal of the ERISA claim will be reversed, with suggestions for further proceedings that will be outlined at the end of this opinion.

As to the retaliatory-discharge claim, we agree with the District Court that no evidence of a causal connection sufficient to create a genuine issue of material fact was forthcoming. Mr. Back makes two main arguments in support of his position. He says that his employment was terminated shortly after he filed for workers' compensation benefits, in the same month, as a matter of fact.[1] Adverse employment action shortly after the filing of a claim is certainly some evidence of causation, but it is not sufficient standing alone, nor does plaintiff say that it should be. Plaintiff points, in addition, to notes that he took of a conversation with his supervisor over the telephone on October 21, 1997. The notes include the following: "terminated over phone + you're on w/c — we're having cutbacks + you're one of the cutbacks." Assuming that the note accurately reflects the conversation, as we must in the present procedural posture of this case, the note does not justify a reasonable inference that the termination occurred on account of the filing of the claim for workers'

---

[1]As late as November 1999, more than two years after the accident that forced Mr. Back to leave work, Danka asked him to sign an employment-termination affidavit identifying his last day of employment as March 1, 1999. Plaintiff refused to sign this document. For purposes of this appeal, we take the facts in the light most favorable to the plaintiff, and, therefore, assume that termination occurred in October of 1997, shortly after the filing of the claim for workers' compensation benefits.

compensation, as opposed to a good-faith reduction in force. The fact that the plaintiff was on workers' compensation benefits was mentioned, but this could easily have been the supervisor's attempt at some sort of consolation, and the "cutback" receives equal mention. We agree with the District Court that the evidence of a causal connection is insubstantial.

As to the retaliatory-discharge claim under Minnesota law, the dismissal is affirmed. As to the ERISA claim, the dismissal is reversed, and the cause remanded for further proceedings. We suggest that the District Court should first determine whether Mr. Back's case is governed by Danka's Severance Pay Policy or by the Kodak plan, the plan that was in effect when Mr. Back was employed by that predecessor company. For this purpose, it will be necessary to determine when the discharge occurred, and whether it occurred as a result of the elimination of the plaintiff's position.[2] In proceeding further with the case, the District Court should keep these suggestions in mind, after receiving and considering, of course, the parties' positions as to what further proceedings are appropriate.

Affirmed in part and reversed in part, with suggestions.

---

[2]The Severance Pay Policy found in Danka's Employee Handbook contains the following provision:

> Special note to former Kodak employees:
> For 18 months after the acquisition closing, any former Kodak employee hired as a direct result of the Kodak OI, KIS and CES acquisition whose positions [sic] is eliminated will be paid severance based on his/her respective division's Termination Allowance Plan in effect as of Dec. 31, 1996. From July 1, 1998 forward, all former Kodak employees whose positions are eliminated will be paid in accordance with the above severance pay guidelines.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.