# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1880

_____

Diane Chorosevic; Lawrence      *
Chorosevic, on behalf of themselves    *
and all others similarly situated,     *
     *
      Appellants,       *
     *   Appeal from the United States
       v.         *   District Court for the
     *   Eastern District of Missouri.
     *
MetLife Choices; Metropolitan Life   *
Insurance Company; United Healthcare   *
Insurance Company; United Healthcare   *
of Alabama, Inc.; United Healthcare of   *
Arizona, Inc.; United Healthcare of   *
Arkansas, Inc.; United Healthcare of   *
Colorado, Inc.; United Healthcare of   *
Florida, Inc.; United Healthcare of   *
Georgia, Inc.; United Healthcare of   *
Illinois, Inc.; United Healthcare of   *
Kentucky, Inc.; United Healthcare of   *
Louisiana, Inc.; United Healthcare of   *
Mid-Atlantic, Inc.; United Healthcare   *
of the Midlands, Inc.; United   *
Healthcare of the Midwest, Inc.; United   *
Healthcare of Mississippi, Inc.; United   *
Healthcare of New England, Inc.;   *
United Healthcare of New Jersey, Inc.;   *
United Healthcare of New York, Inc.;   *
United Healthcare of North Carolina,   *
Inc; United Healthcare of Ohio, Inc.;   *
United Healthcare of Tennessee, Inc.;   *
United Healthcare of Texas, Inc.;   *
United Healthcare of Utah, Inc.; United   *

Healthcare of Wisconsin, Inc.;             *
Uniprise, Inc.; United Healthcare          *
Service Corporation; United                *
Healthgroup, Inc.,                         *
                                           *
          Appellees.                       *
                          _____

                     Submitted: December 15, 2009
                        Filed: April 2, 2010
                          _____

Before RILEY, Chief Judge,[1] WOLLMAN, and MELLOY, Circuit Judges.
                          _____

MELLOY, Circuit Judge.

        Appellant Lawrence Chorosevic pursues this ERISA[2] action on behalf of himself and others similarly situated, alleging that Appellees improperly calculated secondary health benefits owed to him for services rendered in 2004. The district court[3] denied class certification and granted Appellees' motion for summary judgment due to Chorosevic's failure to exhaust available administrative remedies. Chorosevic argues that the district court erred by denying class certification, denying further class discovery, granting Appellees' motion for leave to file answers out-of-time, and granting summary judgment. For the following reasons, we affirm.

_____

        [1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

        [2]Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

        [3]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

## I. Background

In 2004, Chorosevic received health insurance benefits through two ERISA-covered employee welfare benefit plans: a plan issued by Blue Cross and Blue Shield of Missouri ("BCBS") and a plan issued by Appellee Metropolitan Life Insurance Company ("MetLife") known as the MetLife Choices Plan ("the Choices Plan"). Chorosevic was eligible for coverage under the Choices Plan through his wife, Diane ("Mrs. Chorosevic"), who was formerly employed by a wholly owned subsidiary of MetLife. The plan administrator of the Choices Plan was MetLife, and the claims administrator was Appellee United HealthCare Insurance Company ("United").[4] Accordingly, MetLife had full discretion in determining benefit eligibility, whereas United reviewed benefit decisions and had final decision-making authority on whether or not to pay a claim.

Coordination of benefits, which occurs when a person has more than one source of reimbursement for health care expenses, is of central importance in this lawsuit. BCBS was Chorosevic's primary insurer, meaning that BCBS was obligated to pay first when Chorosevic made a claim for medical benefits. The 2003 Summary Plan Description ("SPD") for the Choices Plan included a provision for coordinating benefits, which the parties refer to as the "come out whole" method with a benefits reserve.[5] According to Chorosevic, this method required the Choices Plan to credit

---

[4]United, its state and regional affiliates, and its parent companies are collectively referred to in this opinion as "United."

[5]The SPD provides:

If the MetLife Plan is secondary, it adjusts benefits so that your total reimbursement from all plans is no more than the total allowable expenses. The amount by which the MetLife's Plans benefits have been reduced shall be used by the MetLife Plan to pay allowable expenses not otherwise paid, which were incurred during the calendar year by the person for whom the claim is made.

the money that it saved by being the secondary insurer to a reserve, which could be used to reimburse a claimant for out-of-pocket expenses during the applicable calendar year.

The SPD also set forth procedures for submission of claims and appeals, stating in part: "Participants wanting to dispute an adverse benefit determination, payment amount or plan interpretation that relates to the receipt of plan benefits or exercise of a current right available under the plan must file a claim within 180 days of receipt of the adverse determination." United would review the benefits determination and issue a final decision within thirty days, unless a fifteen-day extension was needed. If United upheld a denial of benefits, a dissatisfied plan participant had sixty days from the notification letter's date to submit a second appeal. After that sixty-day period, no further administrative appeals were permitted under the SPD. United was to review second appeals and determine benefits payable within thirty days.

Chorosevic's claims relate to medical services he received on June 17 and August 20, 2004. For each of those services, the BCBS plan paid an amount and United determined that the Choices Plan owed nothing. Consequently, Chorosevic incurred out-of-pocket expenses in the following amounts: $13.00 for services rendered on June 17, 2004; $69.20 for services rendered on August 20, 2004; and $190.10 for services rendered on August 20, 2004. For each benefits determination, United issued an Explanation of Benefits ("EOB") to Chorosevic describing the appeals procedure, including the 180-day deadline for requesting review of the benefits determination.

On November 17, 2004, Mrs. Chorosevic wrote to United, disputing the determination of secondary benefits under the Choices Plan related to her husband's $69.20 claim. Mrs. Chorosevic complained that United was using the wrong preferred provider rates, which caused it to understate the amount that the Choices Plan saved

by being a secondary benefits provider. Mrs. Chorosevic attached copies of the EOBs from BCBS and United and the hospital bill showing $69.20 due. She also addressed what she called a "multiple coverage limitation" credit, explaining that "[United] saves money as the secondary carrier and that money should be used to pay any remaining charges in full, if the secondary carrier does not pay them."

United denied Chorosevic's appeal on December 7, 2004, concluding that Chorosevic's claim for benefits was processed correctly. The denial letter explained the coordination-of-benefits procedure under the Choices Plan in a way that appears inconsistent with the so-called come-out-whole method with a benefits reserve. The denial letter also notified Chorosevic of his right to submit a second appeal of the adverse benefits determination, which he did not do.

On January 26, 2005, Sharon Bibby, a senior benefits specialist at MetLife, sent a letter to Mrs. Chorosevic stating that United incorrectly processed the $69.20 claim and that MetLife directed United to pay Mrs. Chorosevic $69.20 related to the claim ("the Bibby letter"). This payment, the parties agree, resolved the $69.20 claim. The letter continued: "[United] is reviewing your other claims as well. We are also working with [United] to review and if necessary take corrective action regarding all of the MetLife secondary coordination-of-benefits claims processed by [United]."

On April 28, 2005, Mrs. Chorosevic wrote to Bibby, detailing her belief that United improperly processed her husband's claims in 2002, 2003, and 2004. She attached several EOBs and requested reprocessing of "any claims where [United] did not make payment" since 2002. Additionally, Mrs. Chorosevic specifically addressed the issue of "banked money" and explained, "During those years [United] saved a considerable amount of money as the secondary carrier for which I should not have incurred any out-of-pocket expenses." MetLife did not respond to the April 28 letter. Then, on May 23, 2005, Mrs. Chorosevic sent a letter to United requesting that United reprocess her husband's claims and pay them out of the "banked money" account. She explained, "Since I was not aware that I could request reimbursement out of the

'banked money' account, I am doing so now." Fourteen days later, on June 7, 2005, Mr. and Mrs. Chorosevic commenced this litigation.

Effective January 1, 2006, MetLife amended the Choices Plan to change its method of coordinating secondary benefits to a "non-duplication" method without a benefits reserve. The non-duplication method is less favorable for plan members because the Choices Plan generally pays less secondary benefits and the money the Plan saves by being a secondary insurer is not placed in a reserve for the member's allowed out-of-pocket expenses. Chorosevic does not allege that Appellees improperly processed benefits under the non-duplication method, and therefore, this lawsuit concerns only the coordination of benefits prior to 2006.

In August 2007, United entered into a regulatory settlement agreement, which over thirty states have joined. The State of Missouri joined the agreement by entering a memorandum of understanding with United in November 2008. The settlement agreement identifies coordination of benefits as an area of review and requires United to reprocess claims, make restitution to past and present insureds, and make restitution with interest on underpaid claims. However, neither the settlement agreement nor the memorandum of understanding covers members of self-funded plans, such as Chorosevic.

## II. Procedural History

The Chorosevics filed their initial complaint in the Southern District of Illinois challenging United and MetLife's failure to pay secondary benefits due under the Choices Plan. They voluntarily dismissed that action in November 2005. One month later, they filed their first complaint in this putative class action in the Eastern District of Missouri. With leave from the court, Appellees filed their answers in April 2006, asserting several affirmative defenses, including failure to exhaust administrative remedies.

In December 2006, Appellants filed a motion to certify a class consisting of all members of ERISA-covered health plans controlled, underwritten, or administered by United where the applicable plan was a secondary insurer and included a coordination-of-benefits provision using the come-out-whole method with a benefits reserve. The district court denied the motion for class certification in July 2007, but permitted the Chorosevics to engage in limited class discovery. In September 2007, the district court again denied broader class discovery.

In October 2007, the Chorosevics filed their first amended complaint, asserting a claim to recover benefits under 29 U.S.C. § 1132(a)(1)(B) and claims for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) and (3). On April 28, 2008, upon review of Appellees' partial motion to dismiss, the district court dismissed the § 1132(a)(2) claim for failure to state a claim and all claims by Mrs. Chorosevic for lack of Article III standing.[6] Appellees did not file an answer to the surviving portion of the first amended complaint within ten days after the court's order.

Meanwhile, Chorosevic submitted an amended motion to certify a class action. The newly proposed class consisted of "All persons who used the [Choices] Plan as a secondary insurer from June 30, 1995 to January 1, 2006." In June 2008, the district court denied class certification because the proposed class failed to satisfy the requirements of Federal Rule of Civil Procedure 23(a)(2) and (3).

Appellees' failure to file an answer to the surviving portion of the first amended complaint re-emerged during a hearing on a motion to compel in November 2008. Chorosevic's counsel brought this omission to the district court's attention, and Appellees filed a motion for leave to file answers out of time, explaining that the omission was the result of "an inadvertent oversight." Despite Chorosevic's opposition, the district court granted Appellees leave to file answers out of time. The

---

[6]At oral argument, Appellant's counsel clarified that Mrs. Chorosevic does not join in this appeal.

court noted that it could not find that Chorosevic suffered any prejudice from the delay and that "defendant's failure to answer was not a result of bad faith, but rather the result of excusable neglect."

Chorosevic and Appellees filed motions for summary judgment on the remaining claims in December 2008. While the summary judgment motion was pending, Chorosevic requested leave to file, in essence, a third motion for class certification based on newly discovered evidence that United incorrectly calculated secondary benefits for other ERISA-covered plans with similar coordination-of-benefits provisions. The district court denied the motion to reopen the class certification question, explaining that the new evidence did not cure the problems identified by the court in the two prior orders denying class certification.

The district court granted summary judgment for Appellees on Chorosevic's remaining claims and denied Chorosevic's summary judgment motion. The district court concluded that Chorosevic's failure to exhaust administrative remedies under the Choices Plan barred his § 1132(a)(1)(B) claim to recover benefits owed to him. With regard to Chorosevic's § 1132(a)(3) claim for breach of fiduciary duty, the court noted an exhaustion-of-remedies problem but held that Chorosevic's claim failed as a matter of law because he was essentially requesting an injunction to enforce a contractual obligation to pay money past due, which the Supreme Court disallowed under § 1132(a)(3) in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210–12 (2002).

Chorosevic appeals the district court's orders granting summary judgment, granting Appellees leave to file answers out of time, denying class discovery, denying class certification, and denying alteration of the orders denying class certification.

## III. Summary Judgment

The district court granted summary judgment because of Chorosevic's failure to exhaust available administrative remedies under the Choices Plan. Chorosevic contends that (1) he exhausted his administrative remedies through the November letter to United, (2) his remedies should be deemed exhausted due to United's failures to follow its own appeals procedures, and (3) the exhaustion requirement is inapplicable because further appeals would have been futile. "Exhaustion is a threshold legal issue we review de novo." Kinkead v. S.W. Bell Corp. Sickness & Accident Disability Benefit Plan, 111 F.3d 67, 68 (8th Cir. 1997).

## A. Exhaustion of Administrative Remedies

"Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred." Layes v. Mead Corp., 132 F.3d 1246, 1252 (8th Cir. 1998). Exhaustion of available administrative remedies enables employers and ERISA-covered plans "to obtain full information about a claim for benefits, to compile an adequate record, and to make a reasoned decision," Back v. Danka Corp., 335 F.3d 790, 792 (8th Cir. 2003). "The process is of substantial benefit to reviewing courts, because it gives them a factual predicate upon which to proceed." Id.

Chorosevic alleges that Appellees violated the Choices Plan's coordination-of-benefits provision by failing to reimburse him for out-of-pocket expenses from the benefits reserve, i.e., the money that the Choices Plan saved by being Chorosevic's secondary insurer instead of his primary insurer. The parties refer to this as the "banked money issue." Specifically, Chorosevic contends that Appellees owe him $13.00 for services rendered in June 2004 and $190.10 for services rendered in

August 2004.[7] Chorosevic does not dispute that the 180-day deadline for appealing the denial of benefits expired on approximately February 16, 2005 for the $13.00 claim and April 3, 2005 for the $190.10 claim. As such, we turn to the correspondence prior to those dates.

Chorosevic argues that the November letter from Mrs. Chorosevic to United satisfied the exhaustion requirement. In that letter, Mrs. Chorosevic detailed the charges her husband incurred for surgery on August 20, 2004 and specifically requested that United pay $69.20 immediately. Appellees, on the other hand, contend that this letter did not raise the banked money issue. Appellees interpret the November letter as challenging United's procedure of calculating the amount saved by using BCBS's provider discounts instead of United's provider discounts. Chorosevic responds, and we agree, that Mrs. Chorosevic raised the banked money issue when she stated that United "saves money as the secondary carrier and that money should be used to pay any remaining charges in full, if the secondary carrier does not pay them." The substance of the November letter is what matters, not whether Mrs. Chorosevic used the words, "banked money."

Nonetheless, the November letter does not overcome the exhaustion defense, because Mrs. Chorosevic did not appeal or even reference the *claims* that her husband now asserts in this lawsuit. "It is well-established that when exhaustion is clearly required under the terms of an ERISA benefits plan, the plan beneficiary's failure to exhaust her administrative remedies bars her from asserting *any unexhausted claims* in federal court." Burds v. Union Pac. Corp., 223 F.3d 814, 817 (8th Cir. 2000) (emphasis added); see also Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 186–87 (3d Cir. 1984) ("Section 502(a) of ERISA does not require either issue or theory exhaustion; it requires *only* claim exhaustion."). The November letter explains

---

[7]Chorosevic does not address his breach-of-fiduciary-duty claim or the district court's analysis of that claim. Therefore, we interpret his appeal as limited to his § 1132(a)(1)(B) claim.

in detail the $69.20 in out-of-pocket expenses and explicitly requests payment of $69.20.[8] In contrast, the letter does not reference, let alone describe, the $191.10 or $13.00 claims. Indeed, the letter does not mention any other out-of-pocket expenses or benefits that were improperly processed. Furthermore, Mrs. Chorosevic attached the EOB for $69.20 claim but not the EOBs for the $190.10 and $13.00 claims. In light of these facts, we conclude that the November letter did not put Appellees on notice of the specific claims pursued in this appeal—the $191.10 and $13.00 claims. As such, the November letter did not satisfy the exhaustion requirement with regard to the $190.10 and $13.00 claims.

The only other correspondence prior to the 180-day deadline was the Bibby letter, in which Bibby acknowledged that United should have paid the $69.20 claim and stated that United "is reviewing your other claims as well." Without citing any authority or a legal theory for the Court to apply, Chorosevic argues that the Bibby letter demonstrates that he exhausted his administrative appeals. He argues that the Bibby letter "flies in the face" of Appellee's position that Chorosevic "needed to take additional steps to exhaust with respect to those other claims."

Giving Chorosevic the benefit of the doubt, we interpret his argument as a claim of estoppel. "The principle of estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny that representation." Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 659 (8th Cir. 1992). Chorosevic's estoppel-like argument fails as a matter of law because Chorosevic has not offered any evidence that he relied on the Bibby letter to his detriment. There is no indication that, but for Bibby's representations, he would have exhausted available administrative appeals, i.e., filed a second appeal within the sixty-day limitations period. See Gallegos v. Mt. Sinai Med. Ctr., 210 F.3d 803, 811 (7th Cir. 2000) (rejecting plaintiff's estoppel claim "because she has not shown that but for [her insurer's] representations she would have

---

[8]As previously explained, United paid the $69.20 claim and Chorosevic does not pursue it any further.

filed an administrative appeal within the [plan's] limitations period."); Brant v. Principal Life & Disability Ins. Co., 50 F. App'x 330, 332 (8th Cir. 2002) (unpublished per curiam) (stating that an equitable estoppel claim based on an ERISA-plan fiduciary's misrepresentation requires "evidence showing reasonable and detrimental reliance or extraordinary circumstances"). As such, this is not a case where an insurance company or claims administrator misled a claimant into procedurally defaulting his or her opportunity for administrative review and then asserted failure to exhaust administrative remedies as an affirmative defense. See Gallegos, 210 F.3d at 810 (stating that estoppel may preclude an affirmative defense of failure to exhaust administrative remedies "where that failure results from the claimant's reliance on written misrepresentations by the insurer or plan administrator.").

Furthermore, as the district court explained, this result is consistent with our decisions that have encouraged administrators of ERISA-covered plans to informally review and reconsider claims for benefits. E.g., Abdel v. U.S. Bancorp, 457 F.3d 877, 881 (8th Cir. 2006); Mason v. Aetna Life Ins. Co., 901 F.2d 662, 664 (8th Cir. 1990) (per curiam). If we were to conclude that the Bibby letter exhausted Chorosevic's administrative appeals or restarted the time limit for such appeals, then claims administrators may become less willing to reconsider claims on their own accord, as MetLife did in this case. That said, our decision does not affect the limits on what an insurance company can say to an insured when a company informally reconsiders a denial of benefits. See, e.g., Cavegn v. Twin City Pipe Trades Pension Plan, 223 F.3d 827, 830–31 (8th Cir. 2000) (holding that the statute of limitations did not bar plaintiff's claim because his ERISA plan represented that it was treating his submission of information as a *new* application for benefits); Black v. TIC Invest. Corp., 900 F.2d 112, 116 (7th Cir. 1990) (applying estoppel where a pension plan represented that benefits would be paid as soon as they were approved by a bankruptcy court; stating, "No fair reading of the language would give a casual reader notice that [the plan] intended to contest any claim.").

B.  "Deemed" Exhausted

Relying on the Secretary of Labor's ERISA regulations, Chorosevic argues that he is deemed to have exhausted his administrative remedies because Appellees failed to "follow reasonable claims procedures."  29 C.F.R. § 2560.503-1(l).  Specifically, Chorosevic contends that Appellees' EOBs were inadequate and that Appellees failed to respond to the April and May letters sent to United.  We first address the EOBs.

ERISA's notice provision requires that every employee benefit plan "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."  29 U.S.C. § 1133(1).  "The purpose of this requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts."  DuMond v. Centex Corp., 172 F.3d 618, 622 (8th Cir. 1999).  The Secretary of Labor has promulgated regulations governing the manner and content of notification-of-benefit determinations under employee benefit plans, requiring the plans to set forth several categories of information in a manner calculated to be understood by the claimant.  See 29 C.F.R. § 2560.503-1(g).[9]  We have explained that

---

[9]Section 2560.503-1(g) lists the information required in an EOB:

(i)     The specific reason or reasons for the adverse determination;
(ii)    Reference to the specific plan provisions on which the determination is based;
(iii)   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; [and]
(iv)    A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]

-13-

"administrative efficiency is a virtue" at the initial claim denial stage, "so long as disappointed claimants are advised of their right to pursue the plan's review procedures." Kinkead, 111 F.3d at 69. "Therefore, the initial claim denial need not be extensive, provided that it explains the basis for the adverse initial decision sufficiently to permit the claimant to prepare an informed request for further review." Id.

Chorosevic claims that United's EOBs were inadequate for three reasons. First, Chorosevic alleges that the EOBs did not clearly state that his benefits were denied. Having reviewed the EOBs for the $13.00 and $190.10 claims, we disagree. The EOBs both say "PLAN PAYS 0.00" and explain that no benefits are payable because Chorosevic had not yet exceeded his deductible amount. Chorosevic cites no misleading or ambiguous language from an EOB. Furthermore, Mrs. Chorosevic's subsequent letters to United show that she was aware of United's decisions to deny benefits.

Second, Chorosevic contends that the EOBs were deficient because they did not identify "additional materials or information" upon which the denials were based. Nothing in the Choices Plan, ERISA, or the regulations requires an EOB to identify such materials or information.

Third, Chorosevic complains that the EOBs did not describe the additional materials or information needed for further review. However, United had to identify and request additional information only if it "believe[d] that more information [was] needed to make a reasoned decision." Booton v. Lockheed Med. Benefits Plan, 110 F.3d 1461, 1463 (9th Cir. 1997). We may excuse a claimant from exhausting administrative appeals when the ERISA plan's actions or omissions deprive the claimant of information or materials necessary to prepare for administrative review or for an appeal to federal courts. See Brown v. J.B. Hunt Transp. Servs., Inc., 586 F.3d 1079, 1086 (8th Cir. 2009) (detailing the specific types of information that

-14-

plaintiff was deprived of due to plan's failure to respond to plaintiff's repeated requests for the administrative record). Chorosevic has made no such showing here.

As an alternative basis to deem his remedies exhausted, Chorosevic points to the undisputed fact that United failed to respond within thirty days to the letters Mrs. Chorosevic sent in April and May 2005. However, it is also undisputed that her letters were untimely under the SPD's appeals procedure.[10] The district court concluded that United was not obligated to respond to Chorosevic's untimely appeals, because "[t]he exhaustion requirement would be rendered meaningless if a claimant could belatedly appeal a denial of benefits, and thereby trigger the obligation of a provider to respond." Chorosevic does not dispute this reasoning. He merely quotes Abdel v. U.S. Bancorp, 457 F.3d 877 (8th Cir. 2006), in which we said, in dictum, that the claimant's "request and subsequent internal appeal may have been sufficient to meet the exhaustion requirement even though [the claimant] did not initially pursue her internal remedies in a timely manner." Id. at 881. Because the quoted language was not essential to the judgment in Abdel,[11] we are not obligated to follow it, although we will respectfully consider the suggested conclusion. Wilson v. Zoellner, 114 F.3d 713, 721 n.4 (8th Cir. 1997).

_____

[10]The SPD required Chorosevic to appeal a benefits denial within 180 days and to file a second appeal within sixty days of receiving a denial of a first appeal. The April and May letters were sent after both of these deadlines passed.

[11]The issue actually decided in Abdel was when the relevant claim accrued and therefore whether the statute of limitations expired. Chorosevic apparently admits that the suggestive language from Abdel was dictum, because he does not argue that the district court erroneously reached that conclusion.

Ultimately, we agree with the district court's reasoning.[12] Appellees did not violate their appeals procedure, because the SPD did not require United or the Choices Plan to respond to Chorosevic's untimely appeals. Requiring such a response (or deeming Chorosevic's appeals exhausted) would enable claimants to easily circumvent a plan's appeals procedure, thereby rendering toothless a plan's time limits for claims and appeals. See Conley v. Pitney Bowes, 34 F.3d 714, 717 (8th Cir. 1994) (stating that terms of an ERISA plan "must be construed to render none of them nugatory."). We decline to interpret the SPD appeals procedures in a way that would undermine claimants' incentives to follow such procedures. See Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980). As such, Chorosevic's administrative remedies are not deemed exhausted.

## C. Futility

Chorosevic's last argument in regard to the exhaustion-of-remedies defense is that additional efforts to exhaust would have been "wholly futile." See Burds, 223 F.3d at 817 n.4. This "narrow" exception to the exhaustion-of-remedies requirement requires a plan participant to "show that it is certain that her claim will be denied on appeal, not merely that she doubts that an appeal will result in a different decision." Brown, 586 F.3d at 1085 (quotation and alterations omitted). "Unsupported and speculative claims of futility do not excuse a claimant's failure to exhaust his or her administrative remedies." Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887, 898 (8th Cir. 2009) (quotation and alterations omitted).

We conclude that Chorosevic has not demonstrated futility; he has not shown that Appellees would not have paid the $190.10 and $13.00 claims if he had appealed those claims. He has not shown that the Choices Plan's position was "so fixed that

---

[12]We diverge from the district court's order on one point: the premise that the April letter was not an appeal because it was sent to Bibby directly instead of United. Under the facts of this case, we believe it was reasonable for Mrs. Chorosevic to respond to the person who sent her a notice of reconsideration.

an appeal would serve no purpose." Tomczyscn v. Teamsters, Local 115 Health & Welfare Fund, 590 F. Supp. 211, 216 (E.D. Pa. 1984). All we have from Appellees on the banked money issue are the EOBs, and those notices are not enough to show futility. See Kimble v. Int'l Bhd. of Teamsters, 826 F. Supp. 945, 947 (E.D. Pa. 1993). Moreover, as the district court noted, Appellees' pattern of conduct belies the conclusion that the appeals procedure here was futile. Importantly, Appellees actually paid the only claim that Chorosevic appealed in the November letter (the $69.20 claim). MetLife's reconsideration and payment of the $69.20 claim on its own initiative indicate that exhaustion was not futile.

Chorosevic argues that Appellees' position in this litigation demonstrates that further administrative appeals would have been futile. In support, he cites Appellees' answers to the first amended complaint, in which Appellees stated that denial of secondary benefits to Chorosevic was correct and within their discretion. The district court rejected this theory of futility, noting that it was "not inclined to adopt any argument that would put a party at a disadvantage for exercising their rights to defend themselves in litigation." Again, we agree with the district court's reasoning, which Chorosevic does not challenge. If a litigation position is enough to show futility, as Chorosevic suggests, then the futility exception would swallow the exhaustion doctrine. Cf. Springer v. Wal-Mart Assocs.' Group Health Plan, 908 F.2d 897, 901 (11th Cir. 1990) (rejecting an application of the futility doctrine because "the exhaustion of internal administrative remedies would be excused in virtually every case."). Because exhaustion of administrative remedies serves worthwhile purposes, we decline to apply the futility exception so broadly.

We hold that Chorosevic failed to exhaust administrative remedies available under the Choices Plan and that none of the reasons for excusing such failure apply. Accordingly, the district court properly granted Appellees' motion for summary judgment.

## IV. Leave to File Answers Out of Time

Chorosevic also appeals the district court's order granting Appellees leave to file answers nearly seven months after the court partially granted Appellees' motion to dismiss. We review a district court's decision to allow a party to submit a late filing for an abuse of discretion. Sugarbaker v. SSM Health Care, 187 F.3d 853, 855–56 (8th Cir. 1999). "An abuse of discretion occurs where the district court fails to consider an important factor, gives significant weight to an irrelevant or improper factor, or commits a clear error of judgment in weighing those factors." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009).

Federal Rule of Civil Procedure 6(b)(1)(B) permits a district court to extend the time for a party to submit a filing "if the party failed to act because of excusable neglect." Excusable neglect is an "elastic concept" that empowers courts to accept, "where appropriate, . . . late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392, 388 (1993). The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Id. at 395. "[T]he following factors are particularly important: (1) the possibility of prejudice to [Chorosevic]; (2) the length of [Appellees'] delay and the possible impact of that delay on judicial proceedings; (3) [Appellees'] reasons for delay, including whether the delay was within [their] reasonable control; and (4) whether [Appellees] acted in good faith." Sugarbaker, 187 F.3d at 856.

The district court relied primarily on two considerations. First, Appellees' failure to file an answer to the surviving portion of the amended complaint was not a result of bad faith, but instead an inadvertent oversight. Second, Chorosevic did not suffer any prejudice from the delay, because he had notice of Appellees' affirmative defenses, including his failure to exhaust administrative remedies, since Appellees pled those defenses in their answers to the first complaint in April 2006. In addition,

although the court did not explicitly rely on this consideration, it noted that Chorosevic failed to bring the Appellees' omission to the court's attention or to Appellees' attention until November 2008, which was over six months after the deadline passed.

Chorosevic contends that Appellees were required to show a factual basis for their "excusable neglect." He urges the Court to examine the reasons Appellees gave for missing the deadline instead of accepting their "naked assertion of inadvertent oversight." According to Chorosevic, Appellees must justify or satisfactorily explain their failure to file an answer to the surviving portion of the complaint. Further, Chorosevic asserts that the court may consider the equitable factors (e.g. prejudice, bad faith, and impact on the proceedings) *only if* there is an adequate showing of excusable neglect. We disagree.

Chorosevic relies on Lowry v. McDonnell Douglas Corp., 211 F.3d 457 (8th Cir. 2000), in which the plaintiff filed her notice of appeal to the district court out of time after her claims were dismissed on summary judgment. In that case, we held that the district court abused its discretion in holding that a plaintiff demonstrated excusable neglect under Federal Rule of Appellate Procedure 4(a)(5). Id. at 464. Our opinion focused on "the reasons [the plaintiff] gave for missing the deadline." Id. at 463. We noted, however, "that a finding of sufficient innocence on the part of the movant *is not a condition precedent to our obligation to consider the other equitable factors*." Id. (emphasis added); see also Pioneer, 507 U.S. at 395 n.14 (rejecting the position that judges may "take account of the full range of equitable considerations only if they have first made a threshold determination that the movant is sufficiently blameless in the delay.") (quotation omitted). Thus, Lowry does not support the conclusion that the district court erred by considering the equitable factors, such as the lack of prejudice to Chorosevic and Appellees' good faith. Indeed, Lowry suggests the opposite—that the district court was obligated to consider those factors.

We conclude that the district court did not commit a clear error of judgment in how it evaluated the considerations relevant to excusable neglect. The court's reasoning with regard to lack of prejudice and Appellees' good faith is sound and unchallenged on appeal. Moreover, the district court's order is supported by the fact that Appellees have a meritorious defense, see supra Section III, which is a relevant consideration. Union Pac. R.R. Co. v. Progress Rail Servs. Corp., 256 F.3d 781, 783 (8th Cir. 2001); Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 784 (8th Cir. 1998). If the district court would have denied leave to file answers out of time, it would have imposed on Appellees a severe penalty unmatched by any prejudice to Chorosevic. Such a result would have contravened "[t]he judicial preference for adjudication on the merits[, which] goes to the fundamental fairness of the adjudicatory process." Oberstar v. F.D.I.C., 987 F.2d 494, 504 (8th Cir. 1993). In cases where "the judicial disfavor for default dispositions is not implicated," courts may focus primarily on the reason for the movant's delay. Gibbons v. United States, 317 F.3d 852, 855 n.4 (8th Cir. 2003). However, that concern is implicated here. Thus, we hold that the district court did not abuse its discretion in granting Appellees leave to file answers out of time.

## V. Class Certification and Discovery

Because Chorosevic's individual claim was properly dismissed for failure to exhaust administrative remedies, he "cannot represent the putative but uncertified class." Telco Group, Inc. v. Ameritrade, Inc., 552 F.3d 893, 894 (8th Cir. 2009) (per curiam). Chorosevic was the only remaining named plaintiff, and "[w]ithout a class representative, the putative class cannot be certified." Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc., 120 F.3d 893, 899 (8th Cir. 1997); see also In re Milk Prods. Antitrust Litig., 195 F.3d 430, 436 (8th Cir. 1999). Therefore, we do not reach Chorosevic's arguments that the district court abused its discretion by denying class discovery, class certification, and leave to amend the order denying class certification. Telco, 552 F.3d at 894; Hutchins v. A.G. Edwards & Sons, Inc., 116 F.3d 1256, 1257 (8th Cir. 1997).

## VI. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

_____