# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2174
_____

United States of America

*Plaintiff - Appellee*

v.

Chad Eric Mink, also known as Chad Mink

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: April 9, 2024
Filed: July 11, 2024

_____

Before LOKEN, SHEPHERD, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Following the vacatur of his original sentence, Chad Eric Mink now challenges the district court's[1] denial of his combined motion for a judgment of acquittal or for a new trial under Federal Rules of Criminal Procedure 29 and 33,

_____

[1]The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

which he filed more than three years after his conviction. Having jurisdiction under 28 U.S.C. § 1291, we affirm, finding that Mink has failed to demonstrate excusable neglect for his untimely motion under Federal Rule of Criminal Procedure 45(b)(1).

I.

On June 24, 2019, Mink was convicted at trial of 15 counts arising from an "incessant and extreme harassment" campaign that he waged against his ex-girlfriend and her partner. United States v. Mink, 9 F.4th 590, 597 (8th Cir. 2021). Mink appealed his 600-month sentence, and this Court vacated his conviction on Count 8 and remanded for resentencing on the remaining counts. Id. at 614. On March 1, 2023, one week before his resentencing hearing, Mink filed a combined motion for a judgment of acquittal under Rule 29, or for a new trial under Rule 33, in which he raised new challenges to four of the remaining counts. In a supplemental brief, Mink urged the district court to extend the 14-day filing deadlines under Rules 29 and 33 to allow for consideration of his combined motion, arguing that he had satisfied Rule 45(b)(1)'s excusable-neglect standard. The district court was unpersuaded, finding that the issues Mink raised did not turn on new law or evidence and that Mink had "ample opportunity" to file his combined motion within the Rules' respective deadlines.

II.

Mink appeals, arguing that the district court erred in finding that his failure to act was not due to excusable neglect sufficient to extend the filing deadlines for his combined motion. "This court reviews a district court's excusable-neglect determination for abuse of discretion." United States v. Boesen, 599 F.3d 874, 879 (8th Cir. 2010). Mink had 14 days following the return of his guilty verdict to file a motion for a judgment of acquittal under Rule 29(c)(1) and a motion for a new trial

under Rule 33(b)(2).[2]  He missed these deadlines by more than three years.  Rule 45(b)(1), however, allows a district court, upon a party's motion, to extend a filing deadline "if the party failed to act because of excusable neglect."

"Excusable neglect is an 'elastic concept' that empowers courts to accept, 'where appropriate, . . . late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" Chorosevic v. MetLife Choices, 600 F.3d 934, 946 (8th Cir. 2010) (alteration in original) (citation omitted).  In Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, the Supreme Court noted that an excusable-neglect determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including: (1) "the danger of prejudice to the [opposing party]"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and (4) "whether the movant acted in good faith."  507 U.S. 380, 395 (1993); see also Boesen, 599 F.3d at 879 (noting that these factors apply to criminal cases).  "The four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import" and "will always be critical to the inquiry." Gibbons v. United States, 317 F.3d 852, 854 (8th Cir. 2003) (citation omitted).

The district court primarily relied on the law-of-the-case doctrine and the mandate rule in denying Mink's combined motion; consequently, it provided a rather truncated analysis of the Pioneer factors in its written order, finding Mink's proffered reason for the delay inadequate to establish excusable neglect.  Although we resolve this appeal under Rule 45(b)(1)'s excusable-neglect standard, the district court's limited analysis in this respect does not *ipso facto* warrant reversal. Giles v. Saint Luke's Northland-Smithville, 908 F.3d 365, 368 (8th Cir. 2018) (per curiam). Rather, our "independent consideration" of the Pioneer factors demonstrates that the

---

[2]Rule 33(b)(1) extends the filing deadline to three years for a motion "grounded on newly discovered evidence," which is not at issue here.

district court acted within its discretion to deny Mink's combined motion. Id.; Feeney v. AT&E, Inc., 472 F.3d 560, 564 (8th Cir. 2006).

## A.

We begin with the most important factor: the reason for the delay. Mink must provide "a satisfactory explanation for the late filing," which he has failed to do. Gibbons, 317 F.3d at 855. As the sole justification for his untimeliness, Mink asserts that the Supreme Court's recent opinions in United States v. Taylor, 596 U.S. 845 (2022), and Borden v. United States, 593 U.S. 420 (2021), which were decided after he was convicted, constitute intervening precedent that change the law governing his case. While an intervening change in the law can serve as a valid basis for extending the time to file post-trial motions under Rules 29 and 33, see, e.g., United States v. Abu Khatallah, 316 F. Supp. 3d 207, 210 n.3 (D.D.C. 2018), Mink overstates the significance of these cases. In Borden, 593 U.S. at 429, the Court held that a criminal offense with a mens rea of recklessness does not qualify as a "violent felony" under the force clause of 18 U.S.C. § 924(e)(2)(B)(i). And in Taylor, 596 U.S. at 851, the Court determined that attempted Hobbs Act robbery does not qualify as a "crime of violence" under the force clause of 18 U.S.C. § 924(c)(3)(A).

Mink relies on these cases to challenge the validity of his convictions on counts 3 and 10 of the indictment for interstate domestic violence, an element of which requires that the defendant commit or attempt to commit a crime of violence against an intimate partner. See 18 U.S.C. § 2261(a)(1). He argues that the uncharged predicate offenses specified in the jury instructions—attempted aggravated battery with a deadly weapon, attempted arson, attempted willful injury, and attempted assault with a dangerous weapon—do not qualify as crimes of violence under § 2261(a)(1) because these offenses do not require as an element "the use, attempted use, or threatened use of force." As the district court noted, however, "Courts have been wrestling with questions about what constitutes a 'crime of violence' or 'violent felony' under federal criminal statutes for many years before Mink's trial in June 2019." While Mink cites Borden and Taylor for their persuasive

-4-

value, given that § 2261(a)(1) explicitly criminalizes an *attempt* to commit a crime of violence, whereas the force clauses at issue in <u>Borden</u> and <u>Taylor</u> do not, <u>see</u> <u>Taylor</u>, 596 U.S. at 853, it follows that these cases did not effect a sea change relating to a conviction for interstate domestic violence. Mink cites no authority indicating otherwise.

The delay was also within Mink's reasonable control. We recognize that the district court appointed a new attorney to represent Mink during resentencing, and this attorney filed the combined motion. But a post-verdict substitution of counsel does not excuse the failure to comply with the filing deadlines of Rules 29 and 33, at least where the delay was not due to the previous attorney's ineffective assistance. <u>See</u> <u>United States v. Munoz</u>, 605 F.3d 359, 369-71 (6th Cir. 2010). Generally speaking, "clients must be held accountable for the acts and omissions of their attorneys." <u>Pioneer</u>, 507 U.S. at 396. Even if "<u>Pioneer</u>'s 'your lawyer, your fault' principle should be applied less stringently in the criminal context," <u>Munoz</u>, 605 F.3d at 369, the fact remains that Mink's post-conviction counsel waited two months following his appointment to file the combined motion. Thus, regardless of whether Mink's previous attorney was deficient for failing to timely file, this factor weighs against a finding of excusable neglect. <u>See</u> <u>United States v. Elenniss</u>, 729 F. App'x 422, 425-26 (6th Cir. 2018) (noting that the defendant's untimeliness may have been excused while he was represented by deficient counsel but that his new attorney's two-month delay in filing a Rule 33 motion weighed against a finding of excusable neglect).

B.

Furthermore, the length of the delay in this case was inordinate. We have previously determined under this factor, for example, that a 45-day delay in filing a response to a motion for summary judgment was "likely insignificant," <u>Giles</u>, 908 F.3d at 368-69, while, on the other end of the spectrum, we have affirmed a finding that a nearly 10-month delay in filing a Rule 33 motion for a new trial counseled against a finding of excusable neglect, <u>Boesen</u>, 599 F.3d at 879. A delay of more

than three years and eight months, as it elapsed here, greatly exceeds the outer bounds established by this Court's case law.

And the lengthy delay directly impacted judicial proceedings: Mink filed his combined motion a mere week before resentencing, forcing the district court to continue the hearing by two months to allow for additional briefing by both parties and for consideration of the motion. Perhaps Mink's attorney could have mitigated the impact had he sought leave to file the combined motion following his appointment, which would have "put the court on notice that such arguments were in the offing." Elenniss, 729 F. App'x at 425. The only notice that he provided, however, was the filing of the motion itself. In the meantime, "the district court and the government were preparing for sentencing, operating under the impression that all post-verdict motions had come and gone," particularly given that the filing deadlines had passed years prior and Mink's attorney had recently submitted a sentencing-related motion, suggesting that he and Mink were also preparing for sentencing. See id. at 425. This factor weighs against a finding of excusable neglect.

C.

The prejudice factor presents a mixed bag. On one hand, the Government would suffer manifest prejudice if the district court granted Mink's long-delayed Rule 33 motion. The Government would surely appeal, likely delaying further proceedings by at least another year. See Boesen, 599 F.3d at 879. In other words, a new trial in this case would begin nearly five years after Mink's original conviction, requiring the Government to expend significant resources to reacquaint itself and its agents with the nuances of a case that culminated in an 11-day jury trial involving testimony from 68 witnesses and the introduction of over 400 exhibits. In the interim, witnesses could become unavailable, memories may fade, and evidence could be lost. See id. Even accepting Mink's assertion that a new trial would be limited to the counts he challenges in his combined motion—namely, two counts of interstate domestic violence, one count of carrying an explosive during the commission of a federal felony, and one count of maliciously using explosive

materials—a successful prosecution would still require the use of extensive witness testimony and evidence. Further, Mink's contention that the Government could refresh its witnesses' recollections with their prior testimony or introduce trial transcripts in the event that a witness became unavailable underscores the prejudice that the Government would incur if it were required to resort to such measures at the second trial when it did not have to do so at the first trial.

On the other hand, many of the issues inherent in an untimely Rule 33 motion do not attend a belated Rule 29 motion for a judgment of acquittal, as an acquittal obviously would alleviate the need to litigate the case anew. Nonetheless, the extent of the prejudice that would result from the grant of a new trial here is so great that this factor counsels against a finding of excusable neglect.

D.

In assessing whether the movant has acted in good faith, "we have 'consistently sought to distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a "marginal failure" to meet pleading or other deadlines.'" Giles, 908 F.3d at 369 (citation omitted). Here, a delay of more than three years does not indicate a mere "marginal failure" to comply with the filing deadlines imposed by Rules 29 and 33 and, in our view, demonstrates an intentional disregard of the district court's procedures. See Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 785 (8th Cir. 1998); see also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig., 496 F.3d 863, 867 (8th Cir. 2007) (finding that a movant's failure to timely submit claim-related paperwork, "[w]hile not contumacious, perhaps," evidenced "a blatant disregard for the deadlines and procedure imposed by the court," thus demonstrating that the movant acted in bad faith under Pioneer). As discussed, the procedural strictures applicable to all criminal defendants generally do not bend to accommodate the appointment of new counsel, and we presume that Mink and his attorney were aware of the relevant filing deadlines. See Ceridian Corp. v. SCSC Corp., 212 F.3d 398, 403 (8th Cir. 2000) (noting that "ignorance of the rules" does "not usually constitute excusable neglect"

(quoting Pioneer, 507 U.S. at 392)). Mink nonetheless filed his combined motion without even seeking leave from the district court to do so. This factor weighs against a finding of excusable neglect.

Overall, given the inordinate length of the delay and Mink's insufficient reasoning for it, the prejudice that the Government would encounter if the district court ordered a new trial, and the absence of good faith in filing the combined motion, our analysis under Pioneer reveals that Mink's untimeliness was not the product of excusable neglect. See Eberhart v. United States, 546 U.S. 12, 19 (2005) (noting "Rule 45(b)'s insistent demand for a definite end to proceedings"). Accordingly, the district court did not abuse its discretion in denying Mink's combined motion.[3]

III.

The judgment of the district court is affirmed.

_____

---

[3]Throughout his briefs, Mink repeatedly expresses his intention to raise the substance of his combined motion in a 28 U.S.C. § 2255 motion, insisting that the "Government will have to address these issues on the merits sooner or later." While Mink may well pursue habeas relief, this possibility does not alter our analysis. See United States v. Stuckey, 255 F.3d 528, 531 (8th Cir. 2001) (rejecting the same argument and noting that the defendant's right to review before this Court "will depend upon his ability to satisfy the procedural strictures placed upon our review of collateral challenges").